**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANNA WELNOWSKA and JERZY SENDOREK, individually and on behalf of others similarly situated, ) ) ) ) | |
| Plaintiffs, ) | No. 13 C 06244 |
| ) | |
| v. ) | Judge Edmond E. Chang |
| ) | |
| WESTWARD MANAGEMENT, INC. d/b/a Westward Property Management, ) ) ) | |
| Defendant. ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Anna Welnowska and Jerzy Sendorek filed this amended complaint [R. 49] against Defendant Westward Management, Inc., doing business as Westward Property Management, alleging that Westward violated provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, while attempting to collect a debt from Plaintiffs.[1] Westward now moves to dismiss [R. 52] the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, the motion to dismiss is denied, although only one of Plaintiffs' theories of liability remains in the case.

**I. Background**

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in Plaintiffs' favor. *Ashcroft v. al-Kidd,* —— U.S. ——, 131 S.Ct. 2074, 2079 (2011). Plaintiffs are

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331. Citations to the docket are indicated by "R." followed by the docket entry.

Chicago residents who own a condominium in the Madison Manor 2 complex. Am. Compl. ¶ 4. The Madison Manor 2 Condominium Association hired Westward as its property manager on July 1, 2012. *Id.* ¶¶ 4, 7. Part of Westward's duties as property manager was to collect monthly assessments and other charges due to the Association and to prepare notices of delinquency for unpaid debts. R. 49-1, Management Agreement at 9. According to Westward's records, Plaintiffs were already in arrears on Association assessments when Westward assumed its position. Am. Compl. ¶ 8.

On August 30, 2012, Westward sent its first collection letter to Plaintiffs, attempting to collect on a debt allegedly owed to the Association. *Id.* ¶ 18. Plaintiffs disputed, in writing to Westward, that they owed any debt to the Association. R. 49-6, Pl.'s Exh. 6; R. 49-7, Pl.'s Exh. 7. On February 6, 2013, Westward sent Plaintiffs a second letter, notifying Plaintiffs that failure to pay the alleged debt within thirty days would lead to seizure of their home (by termination of possession).[2] R. 49-5, Pl.'s Exh. 5, February 6 Letter. At some point, the Association filed a lawsuit against Plaintiffs in an Illinois state court, seeking collection of assessments, fees, and costs, as well as termination of possession. R. 52-1, Def.'s Br. at 2.

Plaintiffs filed this lawsuit in August 2013, alleging five FDCPA violations by Westward. R. 1, Compl.; Am. Compl. Westward now moves to dismiss each count under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on the grounds that it is not a debt collector under the FDCPA. R. 52, Mot. Dismiss.

---

[2]Plaintiffs allege that this notice was sent by Westward, but the notice is signed by "The Board of Managers of Madison Manor 2 Condominium Association" and "David Westveer, its Agent." R. 49-5, Pl.'s Exh. 5, February 6 Letter. Construing the facts in Plaintiffs' favor, the Court assumes for the purposes of this motion that the February 6th notice was sent by Westward.

2

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555–56; *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of

3

truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

Westward asserts a single argument in support of its motion to dismiss Plaintiffs' amended complaint: that Westward is not a "debt collector" under the FDCPA. Def.'s Br. at 4-12. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). It also clarifies that not every entity involved in collecting a debt owed to another is a "debt collector" for purposes of the Act. In particular, the following are not debt collectors:

> [A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(F).

Westward contends that, as a full-service property manager for the Association, its attempts to collect Plaintiffs' debt were "incidental to a bona fide fiduciary obligation" and thus fall under exception (i). Def.'s Br. at 4, 7. In support, Westward argues that federal district courts have consistently recognized the distinction between a debt collector that is hired for the sole purpose of debt collection and a property manager that is responsible for performing a variety of property management services, including collecting debts from unit owners or

4

lessees. *Id.* at 7-8 (citing *Kirby v. Prof'l Ass'n Mgmt., Inc.*, No. 3:12-cv-697-J20-MCR, 2012 WL 5497951, at *4 (M.D. Fla. Nov. 9, 2012) (granting summary judgment to property manager on FDCPA claim under § 1692a(6)(F)(i) fiduciary duty exception); *Reynolds v. Gables Residential Servs., Inc.*, 428 F. Supp. 2d 1260, 1264 (M.D. Fla. 2006) ("[Property manager] not only had a right but indeed a fiduciary obligation to collect rent and corresponding fees from tenants."); *Berendt v. Fairfield Resorts, Inc.*, 339 F.Supp.2d 1064 (W.D. Wis. 2004) ("Because the [Management Agreement] designates the [property] manager . . . as the Association's agent and because agency creates a fiduciary relationship between the agent and the Association . . . defendant was acting incidentally to a bona fide fiduciary obligation when it collected the maintenance fees on behalf of the Association.")). Because debt collection was only one of many duties that Westward assumed as the Association's property manager, *see* Management Agreement at 9-10, Westward argues that its debt-collection practices fall squarely under the fiduciary-duty exception. Def.'s Br. at 10.

In response, Plaintiffs rely primarily on the Seventh Circuit's holding in *Carter v. AMC, LLC*, 645 F.3d 840, 843-44 (7th Cir. 2011), to argue that Westward is a debt collector. R. 55, Pl.'s Response Br. at 3-5. Like this case, the tenant in *Carter* sued a property manager under the FDCPA. 645 F.3d at 843-44. But unlike this case, in determining whether the property manager was a debt collector, the Seventh Circuit considered 15 U.S.C. § 1692a(6)(F)(iii), a *different* FDCPA exception that "concerns a debt which was not in default at the time it was obtained by [the debt collector]." 645 F.3d at 843. Finding that a property manager "obtains" a debt when it becomes the property owner's agent, and that the plaintiff's debt in that

5

case arose only after the defendant had assumed its management position, the Seventh Circuit affirmed the district court's dismissal of the plaintiff's FDCPA claims under § 1692a(6)(F)(iii). *Id.* at 843-44.

Here, Plaintiffs argue that because their alleged debt arose *before* Westward assumed its management position, the Seventh Circuit's holding in *Carter* compels the conclusion that Westward is a debt collector. Pl.'s Response Br. at 3-5. This argument misses the mark. In deciding that the *Carter* property manager was not a debt collector, the Seventh Circuit relied on only one of the four exceptions enumerated in § 1692a(6)(F). Nothing about the Seventh Circuit's conclusion in *Carter* limits the potential application of the other three exceptions. Indeed, on determining that the pre-existing-relationship exception applied, there would have been no need to consider any other exception. So the fact that Plaintiffs here had allegedly defaulted on their debt by the time Westward "obtained" it has no effect on whether Westward's attempt to collect that debt was incidental to a bona fide fiduciary obligation owed to the Association.

Plaintiffs concede that Westward owed the Association fiduciary duties, but argue that Westward's debt collection was not incidental to those duties. Pl.'s Response Br. at 5. Numerous courts have held that "[t]he 'incidental to' requirement means that the collection activity must not be 'central to' the fiduciary relationship." *See Grady v. Ocwen Loan Servicing, LLC*, 11-CV-1531, 2012 WL 929928, at *4 (N.D. Ill. Mar. 19, 2012) (quoting *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1034 (9th Cir. 2009)). In support of their contention that Westward's debt collection was not incidental to its fiduciary obligations, Plaintiffs advance two contradictory arguments: (1) Westward's duties were "almost exclusively financial," rendering

6

debt-collection fatally central to Westward's management responsibilities, and (2) Westward "expressly *excluded* debt collection as one of its duties to the Association, so debt collection was not incidental to anything." Pl.'s Response Br. at 5-8.

On the first point, Westward supports its position that debt collection was merely incidental to its management duties by highlighting the breadth of its duties as a "full-service property manager." R. 56, Def.'s Reply Br. at 7. Under the Management Agreement, Westward's duties fall under the following headings: Collections; Online System, Records, Statements; Budget Preparation and Approval by Association; Meeting Attendance; Annual Statement; Utilities and Other Services for Association; Insurance Placement, Records, and Claims; Sales and Leasing Responsibilities; and other Managerial Responsibilities. Management Agreement at 9-10. Under each heading, the Agreement imposes numerous additional duties like "reviewing the references and credentials of prospective purchasers and lessees" and "investigat[ing] and report[ing] all accidents or claims for damage related to the ownership, operation, and maintenance of the common elements of the Building." *Id.* In light of these duties, Westward contends that its collection of unit owners' assessments and preparation of delinquency notices are clearly incidental to its bona fide fiduciary obligation to the Association.

In response, Plaintiffs emphasize that certain duties under each heading are "subject to Board approval" or arise only at the "direction or request of the Board." *See id.*; Pl.'s Response Br. at 6-7. Plaintiffs further allege that there is no evidence, at least at the pleading stage, that the Board exercised these rights and that Westward's other duties (like attending Association/Board meetings) are negligible. Pl.'s Response Br. at 7. Accordingly, Plaintiffs contend that "virtually the only

7

actually imposed duties for Defendant are financial, i.e., collecting current assessments, reporting on the state of finances and proposing a budget based on those finances." *Id.*

Plaintiffs' own correspondence with Westward—which they attached to their pleading, so we may consider them—refutes this argument: in their letters, Plaintiffs asked Westward to resolve issues relating to a leak in their unit, to forward a home-inspection report completed by a plumber hired by Westward, to provide Plaintiffs with "a copy of hours and duties for every day of that cleaning person who is working for that association," and to send Plaintiffs a copy of the minutes from an Association meeting—all non-financial, managerial tasks. Pl.'s Exh. 6, 7. Moreover, the fact that certain duties are subject to Board approval does not withdraw them from the scope of duties Westward must be prepared to perform. But even if Plaintiffs' argument were correct, and Westward's duties were primarily financial, it does not follow that *debt collection* was central to Westward's many management responsibilities under the Management Agreement. For all of these reasons, Plaintiffs' first argument is unavailing.

As to Plaintiffs' second argument—that debt collection fell entirely outside the scope of Westward's duties—Plaintiffs point to the Collections provision of Schedule A ("Administrative Duties of Manager") to the Management Agreement:

> Manager shall collect and, as necessary, receipt for all monthly or other assessments and other charges due to the Association for operation of the Association; provided, however, that *the Manager shall have no responsibility for collection of delinquent assessments or other charges except preparation of notices of delinquency consistent with the Fair Debt Collection Practices Act.*

Management Agreement at 9 (emphasis added). Plaintiffs allege that, true to Westward's disclaimer of responsibility for debt-collection efforts, Westward billed

8

Plaintiffs separately for preparation of the February 6 Demand Letter. Pl.'s Response Br. at 4-5; R. 49-2, Account Statement. Plaintiffs argue that "[i]f such notices were incidental to (i.e., part of) other duties, Defendant would not charge extra. Such services would be part of Defendant's everyday management duties." Pl.'s Response Br. at 5. It is worth noting that, for the purposes of this analysis, "incidental to" does not mean "part of"—on the contrary, "incidental to" means "not . . . central to the fiduciary relationship." *Grady*, 2012 WL 929928, at *4. But Plaintiffs seem to allege that, in preparing its notices of delinquency, Westward was not acting under the Management Agreement at all—that is, that it acted instead under a separate obligation to the Association, and under that separate obligation, debt collection was *not* incidental to other fiduciary duties.

At this stage of the litigation, when the amended complaint is entitled to the presumption of truth and to every reasonable inference in Plaintiffs' favor, the Court concludes that there is just barely enough plausibility to the allegation to permit the case to move forward on this particular theory of liability. At the pleading stage, the $245.00 charge for the February 6 Demand Letter raises a fact question as to whether Westward prepared the notices of delinquency under the Management Agreement or under some other agreement with the Association. If Westward acted under the Management Agreement, then its debt-collection efforts were incidental to a bona fide fiduciary obligation to the Association, as discussed above. If, on the other hand, Westward acted under some other agreement separate from the Management Agreement, then additional facts would be necessary to determine the applicability of § 1692a(6)(F)(i). Practically speaking, the Court doubts whether there really is a separate agreement under which Westward was

collecting debts, because the Management Agreement's Collections provision appears to have obligated Westward to collect all monthly assessments and charges due to the Association and to prepare notices of delinquency. Management Agreement at 9. Nevertheless, this is not a fact question on which the Court can simply pronounce a finding at this stage of the case. Accordingly, the parties will be permitted to engage in limited discovery on this narrow issue (that is, whether the debt-collection efforts were part of the Management Agreement or some separate agreement), which will be discussed at the next status hearing.

## IV. Conclusion

For the reasons stated above, Westward's motion to dismiss [R. 52] is denied, though only one theory remains on how Westward might be a debt collector under the FDCPA. And, for the reasons stated in the Court's February 18, 2014 Minute Entry [R. 53], the class-certification issues are continued.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 24, 2014